UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| EUGENE SPENCE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7: 16-165-DCR |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Eugene Spence and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 13, 16] Spence contends that the administrative law judge ("ALJ") assigned to his case erred by denying his claims for disability income benefits ("DIB") and supplemental security income ("SSI"). [Record No. 14] He requests that the Court direct a finding of disability or, in the alternative, remand for further administrative proceedings. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Spence.

## I.   Procedural History

On May 4, 2010, Spence filed concurrent applications for a period of disability and DIB under Title II of the Social Security Act ("the Act") and SSI under Title XVI of the Act. [Administrative Transcript, "Tr.," 239, 245]  Spence alleged that his disability began February 10, 2009. *Id.*  The Social Security Administration ("SSA") denied his applications initially

- 1 -

and upon reconsideration. [Tr. 159–64] On September 14, 2010, Spence, who was represented by attorney Eric Conn, requested a hearing before an ALJ. [Tr. 170] In an opinion dated November 8, 2010, ALJ David Daugherty concluded that the record supported a fully favorable decision that no hearing was necessary. [Tr. 149–53]

On May 18, 2015, Spence, along with hundreds of other social security beneficiaries, received notice that the SSA had reason to believe that fraud or similar fault was involved in his application and, as a result, his benefits were being suspended. [Tr. 39–44] Specifically, the SSA had reason to believe that fraud was involved in certain cases involving evidence submitted by Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D. and David P. Herr, D.O., dated between January 2007 and May 2011, which was submitted to the SSA by Eric Conn or others associated with Conn's law office. [Tr. 19]

The Appeals Council remanded the case to a new ALJ to decide whether the claimant had been disabled as of November 8, 2010. ALJ L. Raquel Bailey Smith conducted a video hearing on November 10, 2015. [Tr. 20] ALJ Smith was required to disregard Dr. David Herr's October 8, 2010 opinion, but the claimant was permitted to submit additional evidence in support of his applications for benefits. *See* 42 U.S.C. §§ 405(u), 1383(e)(7). [Tr. 20] ALJ Smith denied benefits in a written decision on February 17, 2016. [Tr. 31] Spence sought review by the Appeals Council but that request was denied. [Tr. 1]. Accordingly, the claimant has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Background

Spence was 31 years-old at the time of the ALJ's decision and lived with his mother and father. [Tr. 81] He had a girlfriend and a young son. [Tr. 386, 388] Spence completed

the eleventh grade and took special education classes while in school. [Tr. 84, 306] He worked full-time as an underground coal miner from 2003 through 2009. [Tr. 312] Spence testified that he was forced to stop working in February 2009 due to pain in his back, legs, and arm. [Tr. 74–75] These symptoms began after he was involved in a motor vehicle accident in January 2008, in which the car he was driving was hit by a coal truck. [Tr. 391]

Spence reported having been treated by Dr. Hoover for these problems once a month from 2008 through 2010. [Tr. 76] Dr. Hoover prescribed Lortab and Valium, but these medications only "took the edge off." [Tr. 75] Spence advised ALJ Smith during the administrative hearing that Dr. Hoover "got shut down," and that his treatment records were no longer available. [Tr. 77]

Spence testified that he does not sleep well at night and that he takes three or four 30 to 45-minute naps daily. [Tr. 78] He also reported that walking worsened his pain and he was only able to walk about 35 or 40 steps without sitting down and resting for several minutes. [Tr. 81–82] Spence stated that he can sit in a chair for two or three minutes before changing positions. [Tr. 83] And he reported being able to lift only three or four pounds. [Tr. 83–84] Spence further testified that he did not read well and was unable to complete a job application. [Tr. 84]

David Winkle, M.D., performed a consultative examination in June 2010. [Tr. 405] Spence complained of low back and left leg pain, difficulty walking, left arm pain and numbness, nervousness, difficulty sleeping, and severe headaches. *Id.* Dr. Winkle noted that Spence appeared healthy and that his mood and affect were appropriate. [Tr. 406] He had slightly diminished sensation over his left hand, but his neurologic exam was otherwise normal. *Id.* Spence was able to squat, tandem walk, and could walk on his heels and toes. *Id.*

While Winkle noted some tenderness of the left shoulder and lumbar area, there was no muscle atrophy. Further, the claimant had no pain with straight leg raising. *Id.* He also had normal range of motion.

Dr. Winkle evaluated several x-rays as part of Spence's examination. [Tr. 407] The bony structure of Spence's lumbar spine was normal and the disk spaces were preserved. *Id.* Dr. Winkle believed muscle spasm was probable. *Id.* The claimant's left femur and forearm were also x-rayed, with normal results. *Id.* Winkle concluded that Spence had normal strength and dexterity in the upper and lower extremities, but that his low back problems would limit his ability to perform heavy lifting, as well as bending, twisting, and stooping. *Id.* Winkle added that prolonged walking may be difficult, and that Spence "has some difficulty with use of his left arm." [Tr. 406–07]

Timothy Gregg, M.D., reviewed Spence's file the following month. [Tr. 130–132] Dr. Gregg opined that Spence could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. [Tr. 130] Further, he believed that Spence could walk, stand, or sit for about six hours in an eight-hour workday. *Id.* He opined that Spence had no limitations when it came to pushing, pulling, posture, vision, communication, manipulation, or the environment. [Tr. 130–31] Gregg acknowledged that his findings were less restrictive than those of Dr. Winkle, but believed that Winkle only provided a "snapshot of [Spence's] functioning" and, therefore, did not accurately represent the severity of his limitations. [Tr. 131]

William Rigby, Ph.D., performed a consultative examination concerning the claimant's mental abilities in May 2010. [Tr. 385] Spence advised Dr. Rigby that he had experienced problems with anxiety for two years. Dr. Rigby found that Spence's thought processes were

free of psychotic symptoms, but were somewhat concrete in cognitive style. [Tr. 386] Further, Spence had intact long and short-term memory. Dr. Rigby diagnosed Spence with a depressive disorder and assigned him a Global Assessment of Functioning ("GAF") score of 60, which indicates moderate difficulty in social and occupational functioning. [Tr. 388] Rigby indicated that Spence was below average intellectually, but not mentally retarded.[1]  *Id.*

Rigby concluded that Spence was mildly impaired in his ability to understand, retain, and follow simple instructions. [Tr. 389] He determined that there was no impairment in Spence's ability to sustain concentration and persistence to complete tasks in normal time, but there were moderate limitations regarding Spence's ability to maintain social interactions and to adapt and respond to the pressures of normal day-to-day work activity. *Id.*

Mary Thompson, Ph.D., and Ann Hess, Ph.D., reviewed Spence's file on behalf of the agency. Thompson opined that Spence had mild limitations in maintaining social functioning, but that he was not limited in activities of daily living, or in maintaining concentration, persistence, or pace. [Tr. 401] Thompson noted that Spence drives, goes shopping, and has a limited but active social life. [Tr. 403] She accorded great weight to Dr. Rigby's findings and concluded that Spence's complaints of nervousness did not significantly impact his ability to perform basic work activities. *Id.* Dr. Hess, who reviewed the file on reconsideration, noted that no new medical evidence had been submitted. [Tr. 129] She also gave great weight to Dr. Rigby's findings and agreed with Thompson's assessment. [Tr. 130]

The ALJ determined that Spence had the following severe impairments: chronic back pain and depressive order, not otherwise specified. [Tr. 23] She determined that Spence did

---

[1] The name of listing 12.05 has been changed to "intellectual disability," but at the time of Dr. Rigby's report, it was "mental retardation." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05(C).

- 5 -

not have an impairment or combination of impairments that met or medically equaled a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 62] After considering the record, the ALJ determined that Spence had the residual functional capacity ("RFC") to perform a reduced range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). [Tr. 25] Specifically, the ALJ determined that Spence could perform medium work with

> [f]requent stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. The beneficiary could occasionally climb ladders, ropes, and scaffolds. He could frequently handle and finger with the left, non-dominant upper extremity. The beneficiary was able to understand, remember, and carry out unskilled, simple, repetitive, and routine tasks in an environment where tasks involved work primarily with things, not people. The beneficiary was able to adapt to the occasional changes associated with unskilled work. The beneficiary was able to perform tasks learned through demonstration as opposed to reading instructions.

[Tr. 25]

Spence could not perform any of his past relevant work based on this RFC. [Tr. 29] Because there were jobs existing in significant numbers in the national economy that Spence could perform, however, the ALJ determined that he had not been under a disability from the alleged onset date through the date of the prior ALJ's decision, on November 8, 2010. [Tr. 29–31]

### III.   Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the

claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV. Analysis

#### A. Sufficiency of the Record

Spence contends that, upon redetermination, the record did not contain sufficient medical evidence for the ALJ to make a decision supported by substantial evidence. In this same vein, the claimant argues that the ALJ had a duty to send him for further physical and psychological examinations before rendering a decision. [Record No. 14, p. 10] However, the Commissioner is not required to gather additional evidence to replace evidence that is disregarded during the redetermination process pursuant to 42 U.S.C. §§ 405(u) and 1383(e). Rather, the burden is on the claimant to produce additional evidence. *See, e.g., Robinson v. Colvin*, No. 1: 13-cv-2536, 2015 WL 1400585, at *21 (N.D. Ohio, March 26, 2015) (citing *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)).

Additionally, an ALJ is not required to order an additional examination unless more evidence is needed to render a decision. *See Landsaw*, 803 F.2d at 214. Here, not only were additional examinations unnecessary, but the ALJ would not have been permitted to consider such evidence. When redetermining entitlement to benefits under §§ 405(u) and 1383(e), the ALJ considers the claim only through the date of the final determination of the claimant's

application for benefits. SSR 16–1p, 2016 WL 1029284, at *5 (March 14, 2016). While the Commissioner will consider new evidence if it relates to the time period at issue, he or she will not develop new evidence regarding the claimant's current state of health. *Id.*

No IQ scores were available to evaluate the claimant under Listing 12.05, which relates to intellectual disability. While there is no indication that Spence asked the ALJ to refer him for IQ testing, he now argues that the ALJ's decision should be reversed because she failed to do so. [Record No. 14, p. 11] However, as explained in the ALJ's opinion, the record contains no evidence of deficits in adaptive functioning, which are required to establish an intellectual disability under Listing 12.05. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 674–75 (6th Cir. 2009). Any suggestion to the contrary is undercut by the following facts: the claimant had a girlfriend, fathered a child, and obtained a driver's license. [Tr. 87] Prior to the onset of his back pain, he enjoyed hunting and riding a four-wheeler. [Tr. 296] He reported socializing daily, playing video games, and ran heavy machinery as a full-time underground coal miner for six years. [Tr. 94–95, 296, 312–21] Spence reported that, although he was not "smart" when it came to money, he was able to count change and pay bills. [Tr. 295] Based on the foregoing, the ALJ did not err in failing to *sua sponte* order IQ testing of Spence.

The claimant also notes that he hired his attorney one week prior to the administrative hearing, which was held on November 11, 2015. [Record No. 14, p. 11] He contends that the ALJ erred by denying him an extension of time to further develop the record. *Id.* The hearing transcript reveals that the claimant's attorney sought to introduce evidence regarding the claimant's current medical status. [Tr. 70–71] The ALJ explained that she would not be permitted to consider such evidence. *Id.*

Correspondence in the record demonstrates that, on December 7, 2015, the plaintiff was given an opportunity to submit additional evidence. [Tr. 371] On December 21, 2015, a case manager noted that the additional evidence had not been received, however, and that the case was being forwarded to the ALJ for post-hearing review. *Id.* Around that same time, the claimant asked the ALJ to hold the record open for an additional month. [Tr. 372] It is unclear whether that request was granted, but on December 18, 2015, the plaintiff submitted records from the Martin County School District. [Record No. 373–81] The record also contains treatment notes from Three Rivers Medical Center, but it is not known when these were submitted. [Tr. 412–504]

Based on the foregoing, the claimant has not established that the ALJ precluded him from developing the record. Assuming, *arguendo*, that the ALJ denied the claimant a second extension of time to introduce additional evidence, the claimant has not shown that he was prejudiced by this denial. Rather, he has made vague references to additional evidence without explaining how the purported evidence is relevant to his claim of disability during the relevant time period.

## B.   The ALJ's Evaluation of Opinion Evidence

Spence also contends that the ALJ erred in her evaluation of the opinion evidence. [Tr. 14, pp. 11–14] Specifically, he contends that, pursuant to 20 C.F.R. § 404.1519p, the ALJ was obligated to re-contact Drs. Rigby and Winkle because the ALJ remarked that portions of their conclusions were not stated in "vocationally relevant terms." [*See* Tr. 26–27] This argument fails. Under the regulations, the agency will re-contact a consulting examiner for clarification only when the examiner's report is "inadequate or incomplete." 20 C.F.R. §§ 404.1519p(b), 416.919p(b). The claimant has not shown that these reports were inadequate or incomplete,

necessitating further contact. A consultative examiner's report is not rendered incomplete by the absence of a statement about what a claimant can still do despite his limitations. *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016) (citing 20 C.F.R. §§ 404.1519n(c)(6) and 416.919n(c)(6)).

Both Winkle and Rigby engaged in comprehensive examinations of Spence and reported their objective findings. The ALJ noted that, although Winkle's examination of Spence was largely unremarkable, Winkle assessed significant limitations which were apparently based on Spence's subjective complaints. Accordingly, the ALJ gave Winkle's opinion little weight. [Tr. 26] The ALJ found Rigby's conclusion that the claimant was intellectually limited consistent with the claimant's school records. She assigned Rigby's opinion some weight, noting that the limitations assessed were not stated in vocationally relevant terms. [Tr. 27]

As the ALJ found, no treating source provided an opinion regarding the claimant's functional abilities. Notably, the record contains no treatment notes regarding any of the claimant's alleged disabling conditions. Rather, the only records from treating sources are from outside the relevant time period and concern conditions that are unrelated to the disability claims. [*See* Tr. 374–81; 412–504] Dr. Winkle—the only physician to have examined Spence—reported exam results that were largely unremarkable. [Tr. 405] Dr. Rigby noted that Spence had intact long and short-term memory. He was able to recall colors and shapes of common items, and could perform some simple math. [Tr. 386] Rigby diagnosed Spence with depressive disorder and assigned a GAF of 60.[2] [Tr. 388] Drs. Gregg, Thompson, and

---

[2] The plaintiff claims that the ALJ should not have relied on the GAF score assessed by Dr. Rigby because the latest edition of the Diagnostic and Statistical Manual of Mental Disorders

- 11 -

Hess reviewed Spence's file, including these objective findings, and formed their own opinions, using terms the ALJ found to be more vocationally relevant. The ALJ gave some weight to Dr. Gregg's opinion, but indicated that Dr. Gregg did not account for the muscle tenderness and hand paresthesia that Dr. Winkle noted during his examination. [Tr. 28] The ALJ gave little weight to the opinions of Drs. Thompson and Hess, who opined that Spence had only mild limitation in social functioning and no limitation in the ability to maintain concentration. [Tr. 28] The ALJ noted that these reviewing sources did not have access to the claimant's school records which showed a below-average reading level. *Id.*

The ALJ also considered the opinion of the claimant's father. [Record No. 14, p. 14] Cubert Spence completed a third-party function report on May 10, 2010. [Tr. 320] Mr. Spence reported that his son was able to complete all personal care and that he was able to drive a car, and go out alone by himself. [Tr. 324] Further, he reported that his son went out every three days to shop for cigarettes, but only for five minutes. *Id.* He believed his son could not lift much, stand long, reach high, or walk far. [Tr. 326] He also stated that the claimant got upset easily, did not get along well with authority figures, and did not handle stress well. [Tr. 327]

The ALJ noted that, as the beneficiary's father, Mr. Spence had many opportunities to observe the claimant's functioning. [Tr. 28] However, because he was not a medical professional, his ability to make judgments regarding physical and psychological limitations was limited. *Id.* Accordingly, the ALJ only gave the opinion some weight. As Spence notes,

---

("DSM–5") no longer includes the GAF scale. However, the SSA's administrative message entitled "Global Assessment of Functioning Evidence in Disability Adjudication" (AM–13066, effective July 22, 2013) clarified that the SSA "will continue to receive and consider GAF in medical evidence." *See, e.g., Kennedy v. Colvin*, 3: 14-cv-665, 2016 WL 890602, at *2 (W.D.N.C. March 8, 2016).

third-party lay opinions are valid sources for ALJ consideration.  *See, e.g, Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983).  While "perceptible weight" must be given to lay testimony where it fully supported by the medical evidence, *id.*, ALJs are generally not required to discuss every piece of evidence considered under 20 C.F.R. § 404.1513.  *See Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988).  This is particularly true of lay opinions that are cumulative of other evidence in the record.  *See id.*  Although Mr. Spence's third-party report was similar to the claimant's subjective complaints, the ALJ discussed it in her opinion and gave it some weight.  Accordingly, the ALJ's consideration of the third-party report was appropriate.

Ultimately, there is no indication that the ALJ erred in considering the opinion evidence or that the RFC is not supported by substantial evidence.  The ALJ provided good reasons for giving more weight to Dr. Gregg's opinion than Dr. Winkle's, despite the fact that Dr. Gregg had not examined Spence.  *See* 20 C.F.R. § 404.1527(c)(1).  And the RFC took into account the limitations assessed by Drs. Winkle and Gregg, as well as the claimant's subjective complaints.  Specifically, the RFC limited the performance of more challenging physical activities involving the trunk, as well the use of the claimant's left upper extremity.  [Tr. 25] Further, under the assigned RFC, the claimant was limited to simple, routine tasks and learning through demonstration, rather than reading.  *Id.*

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.     Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 16] is **GRANTED**.

  2. Plaintiff Eugene Spence's Motion for Summary Judgment [Record No. 13] is **DENIED.**

  3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

  This 27th day of March, 2017.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge